UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

NICOLE CONTRERAS,

    Plaintiff,

v.

MASTER FINANCIAL, INC.; et al.,

    Defendants.

3:10-cv-0477-LRH-VPC

ORDER

Before the court is defendants Quality Loan Service Corporation ("Quality") and LSI Title Agency, Inc.'s ("LSI") motion for summary judgment (Doc. #7[1]) to which defendant Saxon Mortgage Services, Inc. ("Saxon") joined (Doc. #11). Plaintiff Nicole Contreras ("Contreras") filed an opposition (Doc. #13) to which moving defendants replied (Doc. ##14, 15).

**I.    Facts and Procedural History**

In April, 2006, Contreras purchased real property through a mortgage note and deed of trust originated and executed by defendant Master Financial, Inc. Beginning in 2009, Contreras defaulted on the mortgage note and defendants initiated non-judicial foreclosure proceedings.

Subsequently, Contreras filed a complaint in state court against defendants alleging eleven causes of action: (1) injunctive relief; (2) declaratory relief; (3) debt collection violations;

---

[1] Refers to the court's docket entry number.

(4) Nevada Unfair and Deceptive Trade Practices Act, NRS 598.0923; (5) Nevada Unfair Lending Practices Act, NRS 598D.100; (6) breach of good faith and fair dealing; (7) NRS 107.080; (8) quiet title; (9) fraud through omission; (10) fraud in the inducement; and (11) unjust enrichment. Doc. #1, Exhibit 1. Thereafter, moving defendants filed the present motion for summary judgment. Doc. #7.

## II.     Legal Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is

not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III.   Discussion**

    **A.  Debt Collection Violations**

Pursuant to NRS § 649, it is a violation of state law to violate any provision of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq. NRS § 649.370. Here, Contreras's complaint asserts that defendants violated the FDCPA by initiating a non-judicial foreclosure without following the proper procedures for attempting to collect a debt.

It is well established that non-judicial foreclosures are not an attempt to collect a debt under the Fair Debt Collection Practice Act and similar state statutes. *See e.g., Hulse v. Ocwen Fed. Bank FSB*, 195 F. Supp. 2d 1188 (D. Or. 2002); *Charov v. Perry*, 2010 U.S. Dist. LEXIS 65798 (D. Nev. 2010) (holding that recording a notice of default is not an attempt to collect a debt because the borrower already consented to allow the foreclosure trustee to record the notice upon default).

As defendants did not violate the FDCPA by initiating non-judicial foreclosure proceedings upon Contreras's default of the mortgage note, defendants did not in turn violate NRS § 649. Accordingly, the court shall grant moving defendants motion as to this claim.

    **B.  Nevada Unfair and Deceptive Trade Practices Act**

Pursuant to NRS 598.0923 it is a deceptive trade practice to conduct business in the State of Nevada without all required state, county or city licenses. NRS 598.0923(1). Contreras alleges that defendants violated the statute by recording the underlying notice of default without having a state business license.

Here, defendant Quality acted as the foreclosure trustee in this matter. A foreclosure trustee

3

1  does not have to be licensed to record a notice of default because a foreclosure trustee is not a debt
2  collector. *See e.g., Hulse*, 195 F. Supp. 2d 1188; *Charov*, 2010 U.S. Dist. LEXIS 65798. As such,
3  defendants are entitled to judgment as a matter of law that they did not violate Nevada's Unfair and
4  Deceptive Trade Practices Act.

### C. Nevada Unfair Lending Practices Act

NRS 598D.100 prohibits lenders from making loans "without determining, using commercially reasonable means or mechanisms, that the borrower has the ability to repay the home loan." NRS 598D.100(1)(b). Defendant Saxon is a loan servicer who was not involved in the origination of Contreras's mortgage loan. Further, defendants Quality and LSI are the foreclosure trustee and title recordation company, respectively, and were also not involved in the origination of the loan. A defendant who did not make the loan at issue cannot be subject to an unfair lending practices claim. *See e.g., Velasquez v. HSBC Mortgage Services,* No. 2:09-cv-0784-KJD-LRL, 2009 WL 2338852, *3 (D. Nev. 2009).

Additionally, the court notes that Contreras's complaint references a version of the act after it was amended in 2007. Contreras's loan originated in 2005. Thus, Contreras's loan which was issued before the amendment cannot have violated the new Nevada statute requiring a determination that the borrower has the ability to repay the loan.

### D. Breach of Good Faith and Fair Dealing

#### 1. Contractual Breach

Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr. v. Washoe County*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205). To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must show that: (1) the plaintiff and defendant were parties to a contract; (2) the defendant owed a duty of good faith and fair dealing to the plaintiff; (3) the defendant breached his duty by performing in a manner

4

unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied. *See Perry v. Jordan*, 134 P.3d 698, 702 (Nev. 2006) (citing *Hilton Hotels Corp. v. Butch Lewis Prod. Inc.*, 808 P.2d 919, 922-23 (Nev. 1991).

Here, Contreras alleges that defendants breached the implied covenant because they misrepresented the cost of credit involved in the loan agreement. However, moving defendants were not a party to the origination of the loan. Thus, moving defendants could not have misrepresented any portion of the loan agreement.

Additionally, Contreras's alleged misrepresentations occurred *before* a contract was formed. A party cannot breach the covenant of good faith and fair dealing before a contract is formed. *See Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998) ("an implied covenant relates only to the performance of obligations under an extant contract, and not to any pre-contract conduct"). Accordingly, defendants are entitled to judgment as a matter of law that they did not breach the contractual duty of good faith and fair dealing.

### 2. Tortious Breach

Contreras also alleges that defendants breached their fiduciary duties in their dealings with him. Generally, a loan servicer does not owe a borrower a fiduciary duty. *See Yerington Ford, Inc. v. General Motors Acceptance Corp.*, 359 F.Supp.2d 1075, 1092 (D. Nev. 2004). Absent a duty, there can be no breach. *See A.C. Shaw Constr. v. Washoe County*, 784 P.2d 9, 10 (Nev. 1989).

Because Contreras has failed to allege sufficient facts to establish that moving defendants acted outside their capacity as loan servicers which does not, in itself, create a fiduciary relationship, Contreras's claim for breach of a fiduciary duty fails to state a claim upon which relief can be granted.

### E.  NRS 107.080

Contreras argues that defendants violated NRS 107.080 by not complying with the applicable provisions in NRS 107.086 and 107.087 concerning recordation and mailing of the

1 notice of default. However, the court has reviewed the documents and pleadings on file in this
2 matter and finds that the chain of title shows that Quality, as the foreclosure trustee, substantially
3 complied with the provisions of NRS 107.080 in causing the notice of default to be recorded and in
4 mailing a copy of the notice of default by certified mail.

5 Additionally, recordation and mailing of a notice of default is not a violation of the FDCPA
6 because it is not an attempt to collect the debt from the borrower. *See Maynard v. Cannon*, 650 F.
7 Supp. 2d 1138, 1143-1144 (D. Utah 2006). As such, Quality did not need to be licensed to have the
8 notice of default recorded. *See e.g., Hulse v. Ocwen Fed. Bank FSB*, 195 F. Supp. 2d 1188 (D. Or.
9 2002); *Charov v. Perry*, 2010 U.S. Dist. LEXIS 65798 (D. Nev. 2010). Accordingly, the court shall
10 grant defendants' motion as to this claim.

11 **F. Quiet Title**

12 Under Nevada law, a quiet title action may be brought by someone who claims an adverse
13 interest in property. NRS § 40.010. Here, no defendant claims an interest in the property that is
14 adverse to Contreras. Therefore, Contreras has no grounds to quiet title against moving defendants.

15 **G. Fraud**

16 "In alleging fraud or mistake, a party must state with particularity the circumstances
17 constituting fraud or mistake." FED. R. CIV. P. 9(b). In order to meet the heightened pleading
18 requirements a plaintiff must specify the time, place, and content of the misrepresentation as well
19 as the names of the parties involved. *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 n.10 (9th
20 Cir. 1999); *see also, Parnes v. Gateway 2000*, 122 F.3d 539, 549-50 (8th Cir. 1997) (requiring a
21 plaintiff to allege the requisite who, what, where, when, and how of the misrepresentation).

22 Here, Contreras fails to allege anything more than defendants omitted important
23 information from his loan documents and made misrepresentations about his loan to him during the
24 loan process. However, there are no allegations of who failed to provide the information or what
25 information was not provided. Further, Contreras fails to allege any facts to support

26

6

misrepresentations made during the loan process against moving defendants who were not a party to the origination of the loan. Therefore, the court finds that Contreras's allegations are insufficient to support his claims for fraud.

**H.  Unjust Enrichment**

To set forth a claim for unjust enrichment, a plaintiff must allege that a defendant unjustly retained money or property of another against fundamental principles of equity. *See Asphalt Prods. Corp. v. All Star Ready Mix*, 898 P.2d 699, 700 (Nev. 1995). However, an action for unjust enrichment cannot stand when there is an express written contract which guides that activities of the parties. *LeasePartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997).

Here, there was a written contract between the parties, namely, the deed of trust and mortgage note. These documents guided the interactions, obligations, and rights of the parties. As such, Contreras cannot make a claim in equity for actions that are controlled by a contract to which he is a party. *See LeasePartners Corp.*, 942 P.2d at 187-88.

In opposition, Contreras argues that there is no direct contract between himself and moving defendants as loan servicers and foreclosure trustees and that his claim for unjust enrichment is based on moving defendants retention of monetary benefits related to their services despite the lack of an express contract authorizing their retention of these benefits. However, the loan servicers and foreclosure trustees' rights to conduct a non-judicial foreclosure and retain money form servicing the loan arise from the mortgage note, deed of trust, and subsequent transfers of rights related to these documents to which Contreras is a party. Accordingly the court shall grant defendants' motion as to Contreras's claim for unjust enrichment.

**I.  Injunctive and Declaratory Relief**

Claims for injunctive or declaratory relief are remedies that may be afforded to a party after he has sufficiently established and proven his claims; they are not a separate causes of action. Here,

7

Contreras's claims fail to establish any claim for relief. Accordingly, Contreras is not entitled to injunctive or declaratory relief.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment (Doc. #7) is GRANTED. Defendants Quality Loan Service Corporation; LSI Title Agency, Inc.; and Saxon Mortgage Services, Inc. are DISMISSED as defendants.

IT IS SO ORDERED.

DATED this 4th day of November, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE